JOSHUA D. HURWIT, IDAHO STATE BAR NO. 9527
UNITED STATES ATTORNEY
FRANCIS J. ZEBARI, IDAHO STATE BAR NO. 8950
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
1290 W. MYRTLE ST. SUITE 500
BOISE, ID 83702-7788
TELEPHONE: (208) 334-1211
FACSIMILE: (208) 334-1413

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JASON JOHN CRUMP,<br><br>Defendant. | Case No. 1:22-cr-00169-DCN<br><br>**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS BASED ON RESTORATION OF CIVIL RIGHTS** |

The Defendant was convicted of a felony in Nevada in 2005. Following a term of probation and parole, by operation of Nevada law, *some* of the Defendant's civil rights were restored. However, Nevada law did not restore the Defendant's Second Amendment right to bear arms.

**I.      PROCEDURAL BACKGROUND**

On August 9, 2022, a Boise grand jury returned a Criminal Indictment charging the Defendant with the unlawful possession of firearms and ammunition, in violation of 18 U.S.C. § 922(g)(1). The Defendant was already in custody on state charges for aggravated assault,

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS BASED ON RESTORATION OF CIVIL RIGHTS - 1**

malicious injury to property, and battery on law enforcement. These charges were related to the instant offense and the state dismissed following the Indictment. The Defendant was brought to federal court via a writ of habeas corpus *ad prosequendum* on August 29, 2022, for an initial appearance. The government moved for detention and the Defendant requested a hearing. (Docket No. 7.) Following a hearing, the Defendant was ordered detained based on the danger he posed to the community. (Docket No. 17.) On September 26, 2022, the Defendant filed the instant Motion to Dismiss. (Docket No. 21.)

II.     **FACTUAL BACKGROUND**

*Count One*

On January 20, 2022, the Defendant and his wife (C.H.) were involved in a single car rollover accident in rural Payette County, Idaho. The Payette County Sheriff's Office was called to respond to the accident. The Defendant, who has a felony conviction from Nevada, was in possession of a Springfield XDS9 9mm pistol. The deputy on scene photographed the firearm and documented the serial number. Following the contact, the pistol was returned to the Defendant, as he is not prohibited by Idaho state law. As detailed below, however, the Defendant is prohibited under federal law.

*Count Two*

On July 4, 2022, law enforcement was dispatched to a call by C.H. stating that the Defendant broke the windshield and back window of a vehicle that belonged to her mother that was parked at C.H. and the Defendant's residence in Parma, Idaho. C.H. also told law enforcement that the Defendant had been firing shots into the air and ground with an AR15 style rifle. Later, C.H. told officers that the Defendant fired rounds at her feet and that she was afraid he was going to shoot her. Officers responded to the residence.

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS BASED ON RESTORATION OF CIVIL RIGHTS - 2**

While on scene, officers heard additional rounds being fired and observed the Defendant carrying a rifle around. However, due to it being nighttime, officers could not see where the Defendant was aiming when he fired the gun. The SWAT team was called, and they arrested the Defendant. While being taken into custody, the Defendant assaulted an officer by kicking him. The Defendant was highly intoxicated.

Officers located the firearm that the Defendant was firing in the bed of a pickup truck. They also recovered two loaded high-capacity magazines that each contained ammunition. The Defendant has a felony conviction for Theft from Nevada.

The following day, law enforcement learned there were several additional victims that were not interviewed yet. Law enforcement spoke with three juveniles that were present the prior evening when the Defendant began shooting the firearm. The Defendant challenged the juveniles to fight and shot the AR15 into the ground by their feet. The Defendant fired close enough that debris from the ground struck two of the juvenile individuals. All three juveniles were scared and shaken from the assault.

The Defendant was charged in state court with aggravated assault, malicious injury to property, and battery on law enforcement. A state court judge issued a no-contact order prohibiting the Defendant from contacting C.H. On three separate instances following the issuance of that order, the Defendant called C.H. and counseled her to let C.H.'s mother "be the victim" and to call the prosecuting attorney and tell them that C.H. does not want to prosecute him.

In a separate phone call between the Defendant and his mother, the Defendant stated, "why in the fuck did I shoot at the cops, was I trying to die?" The Defendant's mother then

stated that the day prior, all the Defendant kept saying was if the cops come to the house, he was going to shoot them.

*Search Warrant*

On August 22, 2022, law enforcement served a search warrant at the Defendant's residence in Parma. There, agents seized approximately 55 additional firearms, including the firearm charged in Count One of the Indictment. Additional search warrants from the Defendant's Google and Facebook accounts show the Defendant in possession of many of these firearms. Agents also located a letter from the Federal Bureau of Investigation to the Defendant. The letter, dated February 18, 2019, explained to the Defendant that he is prohibited from possessing firearms under 18 U.S.C. § 922(g)(1). (Exhibit 1.)

## III. STANDARD OF REVIEW

Title 18, United States Code Section 921(a)(20)(B), provides that where a person's civil rights have been restored, that such conviction shall not serve as a predicate for a felon in possession charge unless the "restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." 18 U.S.C. § 921(a)(20)(B). Caselaw interpreting this provision draws a distinction between situations where civil rights are restored by operation of state law versus where civil rights are restored by a document or certificate. "If the 'pardon, expungement, or restoration of civil rights' occurred by operation of law, then [the court] must 'look to the whole of state law' to determine whether the state also had expressly prohibited the defendant from possessing firearms." *United States v. Laskie,* 258 F.3d 1047, 1050 (9th Cir. 2001) (quoting *United States v. Herron,* 45 F.3d 340, 342 (9th Cir.1995)). However, if the restoration occurs by a document or certificate, "then the express reservation must be contained in the document itself." *Laskie,* 258 F.3d at 1050.

## IV. ARGUMENT

### A. The Defendant's civil rights were restored by operation of Nevada state law, which expressly provides his right to possess firearms is not restored absent a pardon.

Under Nevada Revised Statute Section 213.154, the Nevada Parole Division is mandated to issue an honorable discharge to a parolee once their sentence expires, if the parolee "[f]ulfilled the conditions of his or her parole for the entire period of his or her parole." NEV. REV. STAT. § 213.154(1)(a). There is also an exception where the only unmet condition is the failure to pay restitution due to economic hardship. NEV. REV. STAT. § 213.154(1)(b). Nevada Revised Statute Section 213.155, in turn, provides for an automatic restoration of certain civil rights following an honorable discharge. Specifically, a person who receives an honorable discharge from parole:

> (a) Is immediately restored to the right to vote and to serve as a juror in a civil action.
>
> (b) Four years after the date of his or her discharge from parole, is restored to the right to hold office.
>
> (c) Six years after the date of his or her discharge from parole, is restored to the right to serve as a juror in a criminal action.

NEV. REV. STAT. § 213.155(1)(a)-(c). Nevada law also provides that when such a restoration occurs, that the individual is to be provided a document detailing the restoration of those rights. NEV. REV. STAT. § 213.155(2)(a)-(d). The Defendant received the documents in Exhibit 2 following his completion of parole, along with a document detailing the civil rights restored in Exhibit 3.[1] Exhibit 2 specifically provides that "a person who receives an honorable discharge

---

[1] The Nevada Parole Commission provided the documents in Exhibit 2. While these are not the original copies provided to the Defendant, the Parole Commission indicated they are sent to every parolee that receives an honorable discharge with restoration of rights.

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS BASED ON RESTORATION OF CIVIL RIGHTS - 5**

from parole pursuant to NRS 213.154" is restored to the civil rights detailed in Exhibit 3. Thus, the documents sent to the Defendant confirm that the civil rights delineated were restored by operation of state law.

Because it is state law itself that restored civil rights, the Court must look to the "whole of state law" to determine whether the Defendant's right to possess a firearm was restored. *Laskie,* 258 F.3d at 1050. Nevada Revised Statute Section 202.360 provides that a person shall not possess a firearm if that person has been convicted of a felony, "unless the person has received a pardon and the pardon does not restrict his or her right to bear arms." NEV. REV. STAT. § 202.360(1)(b). Here, there is no evidence the Defendant ever received a pardon for his felony conviction. Thus, looking to the whole of state law, the Defendant's right to bear arms was never restored. Accordingly, his felony conviction for Grand Theft from Nevada can serve as a predicate for the offenses charged in the Indictment under 18 U.S.C. § 922(g)(1).

The Government recognizes that although the Defendant's rights were restored by operation of state law, the restoration was also communicated to him by a document he received from the Nevada Parole Commission. However, because the restoration of rights occurred by operation of law, it occurred independent of the Defendant receiving the document from the Parole Commission. Looking to the whole of state law in this scenario adheres to one of the main purposes of § 921(a)(20), as "Congress [] sought to defer to a State's dispensation relieving an offender from disabling effects of a conviction." *Logan v. United States*, 552 U.S. 23, 37 (2007). "The scope of that dispensation is determined by reference to state law, not the contents of a state-issued document announcing the dispensation." *Buchmeier v. United States*, 581 F.3d 561, 574 (7th Cir. 2009) (Skyes, J., dissenting).

B. **Even if the Defendant's civil rights were restored by document or certificate, the incomplete and graduated restoration should not invoke the anti-mousetrapping provision of 18 U.S.C. § 921(a)(20)(B).**

Ninth Circuit caselaw provides that if a "state sends [a] felon a piece of paper implying that he is no longer 'convicted' and that all civil rights have been restored, a reservation in a corner of the state's penal code can not be the basis of a federal prosecution. A state must tell the felon point blank that weapons are not kosher." *United States v. Herron*, 45 F.3d 340, 343 (9th Cir. 1995). For example, in *Herron*, the defendant received a certificate that stated, "that the defendant's civil rights lost by operation of the law upon conviction be *HEREBY RESTORED*." *Herron*, 45 F.3d at 340 n.1. Similarly, in *Laskie*, the defendant received a document that stated he was "discharged from supervision and released from all penalties and disabilities resulting from the crime of which he has been convicted." *Laskie*, 258 F.3d at 1049. In those situations, it makes sense to apply the anti-mousetrapping rule, as the documents can reasonably be read to conclude that the restoration applies to all civil rights, including the right to bear arms.

However, the document provided to the Defendant here is very different. It provides detailed rights that are restored at specific points in time. It does not purport to restore all civil rights, as was the case in *Herron*, nor does it purport to release the Defendant from "all penalties and disabilities" as was the case in *Laskie*. In this situation, Defendant was not led to believe that he could possess firearms by a misleading document or certificate.

Further, the "core civil rights" analysis from *United States v. Andaverde* and its progeny address situations where it is unclear under state law whether the right bear arms have been restored. *See United States v. Andaverde*, 64 F.3d 1305, 1309 (9th Cir. 1995). However, courts "look to the whole of state law to determine whether [] civil rights were restored within the

meaning of § 921(a)(20)." *United States v. Dahms*, 938 F.2d 131, 133 (9th Cir. 1991). Here, Nevada law demonstrates the right to bear arms was not restored. Furthermore, the "core civil rights" analysis should not be used to analyze whether a document or certificate falls within the anti-mousetrapping provision of 18 U.S.C. § 921(a)(20). *See Buchmeier*, 581 F.3d at 573-74 (Skyes, J., dissenting) (explaining how the Seventh and Ninth Circuits' approach to interpreting the "unless" clause results in a fluctuating meaning and concluding that the "anti-mousetrapping interpretation of § 921(a)(20) improperly elevates the contents of the documentary notice over the requirements of state law"). The purpose of that provision is to prevent a person from being misled by a document that tells them that "all civil rights have been restored." *Herron*, 45 F.3d at 343. Where, as here, the document provides detailed rights to be restored and times of restoration, a person would not reasonably believe that such document covers other civil rights *not* included.[2]

//
//
//
//
//
//
//
//
//

---

[2] Indeed, the Defendant was not misled at the time of his possession in this case, as he had notice from the FBI informing him that he was prohibited from possessing firearms.

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS BASED ON RESTORATION OF CIVIL RIGHTS - 8**

## V. CONCLUSION

Because the restoration of civil rights occurred by operation of law, and because Nevada law proscribes the Defendant from possessing firearms, his conviction for Grand Theft can serve as a predicate for the prosecution under 18 U.S.C. § 922(g)(1). Even if the document sent to the Defendant was deemed the mechanism of restoration, the detailed and limited rights it restored should not be used to invoke the anti-mousetrapping provision 18 U.S.C. § 921(a)(20). Thus, the Government respectfully requests this Court deny the Defendant's Motion to Dismiss.

Respectfully submitted this 11th day of October, 2022.

JOSHUA D. HURWIT
UNITED STATES ATTORNEY
By:


*/s/ Francis J. Zebari*
FRANCIS J. ZEBARI
Assistant United States Attorney

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 11, 2022, the foregoing **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS BASED ON RESTORATION OF CIVIL RIGHTS** was electronically filed with the Clerk of the Court using the CM/ECF system, and that a copy was served on the following parties or counsel by:

| | |
|---|---|
| Heidi Johnson<br>Federal Defender Services of Idaho Inc.<br>702 W. Idaho St, Suite 1000<br>Boise, ID 83702<br>Heidi_Johnson@fd.org | ☐ United States Mail, postage prepaid<br>☐ Fax<br>☒ ECF filing<br>☐ E-mail |

          /s/ Wendy Wheeler
          Legal Assistant