Nicole Owens
FEDERAL PUBLIC DEFENDER
Heidi Johnson
Assistant Federal Defender
FEDERAL DEFENDER SERVICES OF IDAHO
702 W. Idaho, Ste. 1000
Boise, Idaho 83702
Telephone: (208) 331-5500
Facsimile: (208) 331-5525

Attorneys for Defendant
JASON JOHN CRUMP

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO
(HONORABLE DAVID C. NYE)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 1:22-cr-00169-DCN |
| | ) | |
| Plaintiff, | ) | **Reply in support of motion to** |
| | ) | **dismiss the indictment because** |
| vs. | ) | **Mr. Crump's civil rights were** |
| | ) | **restored** |
| JASON JOHN CRUMP, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**Introduction**

In 2009, Nevada parole officials gave Mr. Crump a document that "ORDERED" that each of his core civil rights was or would be restored. *See* Discharge Order, ECF No. 21-1

Under well-settled Ninth Circuit law, for the federal firearms disability to remain in effect, the state's order "must tell the felon point blank that weapons are not kosher." *United States v. Herron*, 45 F.3d 340, 343 (9th Cir. 1995) (quoting *United States v. Erwin*, 902 F.2d 510, 513 (7th Cir. 1990)). When rights are restored pursuant to an order or certificate, neither the felon nor the Court are obliged to "look to the whole of state law" to suss out statutory firearms disabilities that the state neglected to include in its order. *Id.* at 342.

In its response, the Government argues that the document "ORDER[ing]" Mr. Crump's rights restored was not an order, but rather a notice that his rights had been restored "independent of" the Discharge Order. *See* Gov.'s Response to Def.'s Mot. to Dismiss Based on Restoration of Civil Rights ("Gov Response) at 6, ECF No. 24. It also contends that—though the Discharge Order restored to Mr. Crump each of the civil rights the Ninth Circuit has deemed essential in this context—it did not suffice to "restore all civil rights." *Id.* at 7. Its arguments are underpinned by citation to a Seventh Circuit dissent which takes issue with Ninth Circuit precedent this Court must follow. *Id.* at 6, 8 (citing *Buchmeier v. United States*, 581 F.3d 561, 572 (7th Cir. 2009) (en banc) (Sykes, C.J., dissenting).

These arguments fail. The Nevada Discharge Order substantially restored to Mr. Crump his civil rights, without "expressly" advising him of any continued restriction on his right to possess firearms. 18 U.S.C. § 921(a)(20). As a result, he was not federally prohibited from possessing firearms on the dates alleged in the Indictment.

## Argument

### A. The evidence does not support the government's assertion that in 2009 Nevada gave Mr. Crump the "Civil Rights and Sealing of Records Notice to Parolees" document.

The Government does not dispute that Nevada issued Mr. Crump the Discharge Order. It asserts, however, that the "Nevada Parole Commission"[1] gave Mr. Crump another document along with the Discharge Order. *See* Gov. Response at 6, *see also* Gov. Ex. 2, ECF No. 24-2. This second document repeats the advisement from the Discharge Order regarding the timeframe for restoration of core civil rights flowing from an honorable discharge from parole. *See* Ex. 2 at 2. Unlike the Discharge Order, however, it cites the Nevada statute providing for the restoration of these civil rights. *Id.* (citing Nevada Revised Statute § 213.55). Exhibit 2 also advises regarding the procedure for petitioning Nevada courts to seal criminal records. *Id.* at 3-4.

Mr. Crump was not given this document. During the pendency of this motion, defense counsel's staff contacted the division of the Nevada Board of Parole Commissioners responsible for the honorable discharge process—the Division of Parole and Probation—and made this request for records:

- Any and All Parole Records (including Any Parole Discharge Orders) from Nevada Parole and Probation. These would be from 2008/2009.

---

[1] Presumably the Government means the Nevada Board of Parole Commissioners, as there is no state agency in Nevada called the "Nevada Parole Commission."

Declaration of Martha Haga, Ex. A. In response, the Division of Parole and Probation provided all documents in their file. This included the Discharge Order. *Id.,* Ex. B. However, it did *not* include anything similar to the Government's Exhibit 2. *See id.*, Ex. C.

The government's factual proffer regarding Exhibit 2 is set out in a footnote: "The Nevada Parole Commission provided the documents in Exhibit 2. While these are not the original copies provided to the Defendant, the Parole Commission indicated they are sent to every parolee that receives an honorable discharge with restoration of rights." Gov. Response at 5 n.1.

This milquetoast representation does not establish that in 2009, Mr. Crump was provided this form. For one thing, Exhibit 2 does not report Nevada law as it existed in 2009. *Compare*, *e.g.*, Exhibit 2 at 2 (noting that a person may petition for sealing of records 3 years after release on a misdemeanor) *with* Nev. Rev. Stat. § 179.245(f) (2009) (permitting sealing of records 2 years after release on misdemeanor). The Government's generalized representation comes from an unidentified source, provides no temporal specification as to when the notice was purportedly sent as a matter of policy, and includes a notice that is inconsistent with Nevada law during the time in question. This generic information is trumped by the case-specific response from a records custodian with the Division of Parole and Probation, who searched Nevada's files for parole documents—and specifically discharge-related documents—related to Mr. Crump and found nothing similar to the Government's Exhibit 2. *See* Haga Declaration.

**B. Mr. Crump's civil rights were restored by the Discharge Order, not by operation of state law.**

Regardless, whether Mr. Crump was provided something similar to Exhibit 2, does not change the bottom line. Mr. Crump's rights were restored by the Discharge Order. And neither Exhibit 2 nor the Discharge Order provide an express advisement of a continued firearm disability, as required under 18 U.S.C. § 921(a)(20).

The Government's contention is that Mr. Crump's rights "were restored by operation of state law" and the Discharge Order simply "communicated to him" the fact of this restoration. Gov. Response at 6. It contends that Exhibit 2 corroborates this because it cites to the Nevada statute setting out the implications of an honorable discharge order. *See* Gov. Response at 5-6. Therefore, it reasons, the Court must look to the entirety of state law to determine if Nevada statutes continued to restrict Mr. Crump's right to possess firearms. *Id.* at 6.[2]

This argument mischaracterizes Nevada law and the Discharge Order. In Nevada, a parolee's rights are not restored simply because they have completed a term of parole. Rather, the Nevada Division of Parole and Probation must take an additional step. That is, they must make a discretionary determination as to whether to issue an honorable or dishonorable discharge from parole. Nev. Rev. Stat. Ann. § 213.154. This turns significantly on the Division's assessment of whether the parolee has "[f]ulfilled the conditions of his or her parole for the entire period of his or her parole." *Id.* at § 213.154(1)(a); *see also Lopez v. Eighth Jud. Dist. Ct. In & For Cnty.*

---

[2] As the Government notes, under Nevada Revised Statute § 202.360(1)(b), only a pardon restores a felon's right to possess a firearm under Nevada state law.

*of Clark*, No. 76175-COA, 2019 WL 720696, at *1 (Nev. App. Feb. 13, 2019) (explaining that under analogous probation statute, Nev. Rev. Stat. § 176A.850(1), "whether to grant an honorable discharge from probation is discretionary").

If the Division concludes honorable discharge is warranted, it must "issue" a discharge on those terms. *Id.* at § 213.154(1). The issued order—like the one Mr. Crump received—is the document that restores the parolee's civil rights. *See* Nev. Rev. Stat. Ann. § 213.155. That is what is reflected in Mr. Crump's Discharge Order, which unambiguously uses the language of an order:

> IT IS HEREBY ORDERED that said Parolee be honorably discharged from said parole.
>
> IT IS FURTHER ORDERED that as of the date this order is signed, said parolee is restored to his civil rights to vote and serve as a juror in a civil action;
>
> IT IS FURTHER ORDERED that FOUR YEARS from the date this order is signed, said parolee will be restored his civil rights to hold office;
>
> IT IS FURTHER ORDERED that SIX YEARS from the date this order is signed, said parolee will be restored his civil rights to serve as a juror in a criminal action.

When a restoration order or certificate is granted "under the *discretionary authority*" authorized by state statute—as it was here—the restoration of rights is pursuant to the certificate, not by operation of state law. *United States v. Chenowith*, 459 F.3d 635, 638 (5th Cir. 2006). This contrasts with states that have a "general provision in its state laws restoring rights to convicted felons who have completed their prison and probation terms." *United States v. Gomez*, 911 F.2d 219, 221 (9th Cir. 1990). It is only such an automatic statutory provision that permits a court to look to the "whole of state law" regarding the restoration of firearm rights. *Id.* at 221.

The Government's argument also fails in light of *United States v. Herron*, 45 F.3d 340 (9th Cir. 1995) and *United States v. Gallaher*, 275 F.3d 784 (9th Cir. 2001). In both of those cases, the Ninth Circuit considered Washington state court certificates that told the defendant their rights were restored by an order issued "pursuant to RCW 9.94A.220." *Herron*, 45 F.3d at 341 n.1; *Gallaher*, 275 F.3d at 790 n.2. That provision of Washington state law set out the process for discharge of a sentence, and the legal significance of the discharge. *See* RCWA 9.94A.220 (1989).

In both *Herron* and *Gallaher* the government argued—as it does here—that the court should look beyond the state certificates to the whole of Washington law. *Herron*, 45 F.3d at 342; *Gallaher*, 275 F.3d at 793. Indeed, in *Gallaher,* Judge Alarcon dissented on the ground that the certificate's citation to Washington statute was sufficient to put the defendant on notice of the limited scope of the rights restored. 275 F.3d at 795 (Alarcon, C.J., dissenting in part).

Both *Herron* and the *Gallaher* majority rejected this argument. *Herron*, 45 F.3d at 342; *Gallaher*, 275 F.3d at 792-793. *Herron* ruled that where the parolee is notified of the restoration of their rights by a certificate or order, "state statutory qualifications [are] irrelevant." 45 F.3d at 342. Even more on point, *Gallaher* held that, given the plain language of 18 U.S.C. § 921(a)(20), a restoration order that does not contain an "express prohibition against possessing firearms or ammunition" simply does not trigger a federal firearms prohibition. 275 F.3d at 793. This is true even if a statutory reference in the order is such "that [the defendant] knew or should

have know that other provisions of state law prohibited him from possessing some firearms." *Id.*

Mr. Crump's case is even stronger than in *Herron* and *Gallaher* because any reference to state law he received came in an ancillary document, not the Discharge Order itself. Further, the Washington statute cited by the *Herron* and *Gallaher* certificates contained language noting that the restoration of rights was limited. *See Gallaher*, 275 F.3d at 795 (Alarcon, C.J., dissenting in part) (emphasizing Wash. Rev.Code § 9.94A.220(3) "expressly provides that a certificate and order of discharge does not 'prohibit[ ] the use of an offender's prior record for purposes of determining sentences for later offenses.'"). In contrast, Nevada Revised State § 213.154 simply states that the discharged parolee's core civil rights—the right to vote, serve on a jury, and take public office—have been, or will be automatically restored on future dates certain.

### C. The Discharge Order was a "restoration of civil rights" under 18 U.S.C. § 921(a)(20).

The Discharge Order advised Mr. Crump that he was "discharge[d] from parole and further liability under his sentence." It further advised him that each of his core civil rights had been or would be returned to him, with no further steps required of him. This is a "restoration of civil rights" in the meaning of 18 U.S.C. § 921(a)(20).

The Government contends the Discharge Order does not constitute a "restoration of civil rights" because it does tell Mr. Crump "all" of his civil rights are restored. Gov. Response at 7.

This is not the standard. An order qualifies as a restoration of civil rights if it substantially restores a defendant's rights. *United States v. Herron*, 45 F.3d 340, 342 (9th Cir. 1995). It is well settled that restoration of the three key civil rights—the right to vote, the right to hold office, and the right to serve on a jury—is substantial. *United States v. Andaverde*, 64 F.3d 1305, 1309 (9th Cir. 1995).

Restoration of these core rights qualifies as substantial, whether restored under the "whole of state law" or through an order or certificate. *Contra* Gov. Response at 7-8. *Herron* holds that the "substantial" restoration standard is the relevant inquiry under both paths. *See Herron*, 43 F.3d at 343 ("One must look to the whole of state law to determine if the restoration is substantial, only where the restoration is by operation of law rather than by certificate or order." (internal citation omitted)).

The Seventh Circuit's en banc decision in *Buchmeier v. United States*, 581 F.3d 561 (7th Cir. 2009) is particularly on point. There, the defendant received a notice informing him, in relevant part, that "[the Illinois Department of Corrections is] pleased to inform you of the restoration of your right to vote and to hold offices created under the constitution of the state of Illinois." *Id.* at 564. Like the Ninth Circuit, the Seventh Circuit's inquiry turns on the "big three" civil rights; the right to vote, hold office, and serve on juries. *Id.* Buchmeier's restoration order informed him that the two of these core rights that had been restricted following his felony conviction had been restored. *Id.* at 564-565. This qualified as a restoration for the purposes of § 921(a)(20) "because the state sent Buchmeier a document stating that his principal

civil rights have been restored, while neglecting to mention the continuing firearms disability." *Id.* at 576; *see also United States v. Chenowith*, 459 F.3d 635, 636 (5th Cir. 2006) (Ohio certificate restoring defendant's "rights to vote, serve on juries, and hold public office" constitutes restoration of civil rights under § 921(a)(20).

The Discharge Order is substantively identical. It explicitly ordered the restoration of each of Mr. Crump's "principal civil rights." *Buchmeier*, 581 F.3d at 567. Such an advisement qualifies as a "restoration of civil rights." *Id.* Put another way, in explicitly advising Mr. Crump of the restoration of the "three civil rights [that] matter," *id.* at 564, the Discharge Order restored "all civil rights," that are relevant to 18 U.S.C. § 921(a)(20), *Herron*, 45 F.3d at 343.

Finally, the Government notes that the Discharge Order provided for future "times of restoration" for some of Mr. Crump's rights. Gov. Response at 8. True: Under the Discharge Order, the last of Mr. Crump's rights was returned on July 13, 2015. The restoration of those rights, however, did not turn upon "further steps that [Mr. Crump] was required to take to have his rights restored." *United States v. Laskie*, 258 F.3d 1047, 1052 (9th Cir. 2001). Restoration was automatic and unconditional on the dates set in the Discharge Order. *Cf. United States v. Osborne*, 262 F.3d 486, 490 (5th Cir. 2001) ("A waiting period does not mean that a restoration of a convicted felon's civil rights can never qualify under section 921(a)(20)."). At the most, then, the Government's argument means that Mr. Crump's rights were not substantially restored until July 13, 2015. That would still leave his possession of firearms in 2022, as alleged in the Indictment, permissible under federal law.

-10-

## Conclusion

By virtue of the Discharge Order, Mr. Crump is permitted under federal law to possess firearms. Because he is not a prohibited person, the charges must be dismissed.

Dated: October 18, 2022

NICOLE OWENS
FEDERAL PUBLIC DEFENDER
By:


/s/ Heidi Johnson
Heidi Johnson
Assistant Federal Defender
Federal Defender Services of Idaho
Attorneys for Defendant
JASON JOHN CRUMP

# CERTIFICATE OF SERVICE

I CERTIFY that I am an employee of the Federal Defender Services of Idaho, and that a copy of the foregoing document was served on all parties named below on this 18th day of October, 2022.

| | |
|---|---|
| Francis Zebari, Assistant United States Attorney | |
| Office of the United States Attorney | ____United States Mail |
| 1290 West Myrtle Street, Suite 500 | ____Hand Delivery |
| Boise, ID 83702 | ____Facsimile Transmission |
| (208) 334-1211 | _X_ CM/ECF Filing |
| (208) 334-1413 – Facsimile | ____Email Transmission |
| Frank.Zebari@usdoj.gov | |

Dated: October 18, 2022        /s/ Thad Blank
                               Thad Blank