UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　Plaintiff,<br><br>v.<br><br>JASON JOHN CRUMP,<br><br>　　Defendant. | Case No. 1:22-cr-00169-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court are Defendant Jason John Crump's two motions to dismiss the indictment. The first Motion argues that the indictment is defective because Crump's civil rights were restored (Dkt. 21). The second argues that the indictment violates the Second Amendment (Dkt. 22). For the reasons below, the Court will GRANT Crump's first motion and DISMISS the second as moot.

## II. BACKGROUND

### A. Factual Background

*1. Crump's Conviction and Discharge Order*

In 2005, Crump pled guilty to possession of stolen property in Clark County, Nevada. He spent a year and a half in prison. In 2008, Crump completed his parole term and Nevada granted him an "Honorable Discharge from Parole with Restoration of Civil Rights" ("Discharge Order"). This Discharge Order says Crump "[is] discharge[d] from parole and further liability under his sentence." Dkt. 21, at 3. It gives dates for when certain

of his rights—to vote, serve on a jury, and hold political office—will be restored, but does not mention his right to bear arms.

2.Crump's Firearm Possession

On January 20, 2022, Crump rolled his car near Payette, Idaho. When sheriff's deputies responded, they found him with a Springfield XDS9 9mm pistol. On Independence Day that same year, Crump's wife called the police. She said that Crump had smashed her mother's windshield and was firing an AR-15 rifle into the air and ground. Responding officers saw Crump carrying a rifle and heard rifle reports, but the darkness prevented them from seeing where he was aiming. When SWAT arrived to arrest him, a drunken Crump kicked one of the officers. Police found the AR-15 and two loaded, high-capacity magazines in Crump's truck.

Later, teenagers came forward and told police that, on the day of his arrest, Crump had challenged them to a fight. The teenagers said Crump shot into the ground at their feet, aiming so close that the bullets kicked up debris that hit their legs.

On August 22, 2022, police searched Crump's home in Parma, Idaho. There they found 55 guns, including the Springfield XDS9 from the crash. A search of Crump's social media accounts revealed that he owned and used the guns found at his house.

**B. Procedural Background**

State prosecutors charged Crump with aggravated assault, malicious injury to property, and battery on law enforcement. Later, a Boise grand jury indicted Crump for unlawfully possessing firearms and ammunition as a felon in violation of 18 U.S.C. §

922(g)(1). After the federal indictment, the State dropped its charges. Crump now moves to dismiss the federal indictment.

### III. LEGAL STANDARD

The Federal Rules of Criminal Procedure allow a defendant to move to dismiss an indictment that is defective. *See* Fed. R. Crim. P. 12(b)(3)(B). In reviewing such a motion, courts must accept the facts alleged in the indictment as true. *Winslow v. United States*, 216 F.2d 912, 913 (9th Cir. 1954).

### IV. ANALYSIS

**A. Restoration of Rights**

Crump argues that the indictment must be dismissed because, at the time of his arrest, he did not have an applicable conviction. The law Crump allegedly violated prohibits felons from owning guns or ammunition:

> It shall be unlawful for any person . . . who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1) (cleaned up). The chapter's definitions section, however, carves out an exception for people whose rights have been restored:

> [A]ny conviction . . . for which a person . . . has had civil rights restored shall not be considered a conviction for purposes of this chapter unless such . . . restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

§ 921(a)(20) (cleaned up).

MEMORANDUM DECISION AND ORDER - 3

Thus, the question here is whether the restoration of Crump's civil rights reached his right to bear arms. If so, his prior conviction does not implicate § 922(g)(1). To determine the answer to that question, the Court must first find how his rights were restored. "Different states have different procedures for restoring civil rights to people convicted of felonies. In some, civil rights are automatically restored by operation of law. In others, they are restored by certificates or orders." *United States v. Herron*, 45 F.3d 340, 342 (9th Cir. 1995).

If the operation of state law restored Crump's rights, the question is whether the restoration was "substantial." *Id.* In making that determination, courts must "look to the whole of state law." *Id.* (cleaned up).

If, on the other hand, an order or certificate restored Crump's rights, the only appropriate inquiry is whether that order expressly excluded his right to bear arms. *Herron*, 45 F.3d at 341. If it does not, state law is irrelevant and the indictment must be dismissed. *See id.* In *Herron*, a felon received a discharge order at the end of his sentence. *Id.* at 340–41. The order purported to restore his civil rights, but did not mention his right to bear arms. *Id.* at 341. When a grand jury indicted him for owning a gun in violation of § 922(g)(1), the district court dismissed the indictment because his "civil rights had been restored, so under [§ 921(a)(20)] he was not to be deemed convicted of the requisite crime." *Id.* The Ninth Circuit affirmed, brushing off the government's arguments that the restoration had implied limits because, under Washington state law, the defendant was not allowed to own a gun. *Id.* at 343 ("Herron might have violated Washington law by possessing a pistol, but even if he did, he did not violate the federal statute because his

MEMORANDUM DECISION AND ORDER - 4

restoration document did not expressly prohibit him from carrying firearms."); *see also United States v. Gallaher*, 275 F.3d 784, 789–90 (9th Cir. 2001) (applying and reaffirming *Herron*).

Here, Nevada gave Crump a discharge order. That Order is broadly titled "Honorable Discharge from Parole with Restoration of Civil Rights." Dkt. 21-1. It begins like a diploma—("To all whom these presents come . . . GREETINGS")—and ends like a court order ("IT IS HEREBY ORDERED . . ."). *Id.* It does not cite any state or federal law. Though it does not purport to restore all of Crump's rights, it also does not expressly exclude his right to bear arms. Instead, it gives dates—all of which had passed by the time of his indictment—for when his right to serve on a jury, vote, and hold office will be restored.

The government argues that the discharge order is merely evidence of the operation of Nevada law. It points out that the Discharge Order tracks Nev. Rev. Stat. § 213, which requires the state parole division to issue honorable discharges and restorations of civil rights when parolees have successfully served out their terms. That statute also provides that the state must give such discharged parolees a written notice detailing the restoration of their rights. § 213.155(2)(a)–(d). Crump's discharge order restates verbatim Nev. Rev. Stat. § 213's language setting out the waiting periods for the right to vote, serve on a jury, and hold office. *Compare* Nev. Rev. Stat § 213.155(a)–(c) *with* Dkt. 21-1. For these reasons, the government argues that the Discharge Order was just a step in a restoration process whose real engine was state law.

Under Nevada law, a felon cannot own guns "unless the person has received a

MEMORANDUM DECISION AND ORDER - 5

pardon and the pardon does not restrict his or her right to bear arms." Nev. Rev. Stat. § 202.360(1)(b). Because Crump—who was never pardoned—cannot own a gun under state law, the government argues that the restoration of his rights was not substantial and his prior conviction thus falls under 18 U.S.C. § 922(g)(1), not the carve-out in 18 U.S.C. § 921(a)(20).

Crump, on the other hand, argues that the Discharge Order independently restored his rights, and because it did not expressly exclude his right to bear arms, his conviction falls under the exception in § 921(a)(20).

For three reasons, the Court finds that the Discharge Order, not the operation of state law, restored Crump's rights. First, the government's theory clashes with the reasoning in *Herron*, 45 F.3d at 342. In that case, which had facts much like this one, the Ninth Circuit held that the discharge order governed and that state law prohibiting the defendant from owning guns was "irrelevant." *Id. Herron* presents a binary choice: either rights are restored by order, or else automatically through state law. *Id.* The government's brief proposes a hybrid third option: rights may be restored by state law operating through a discharge order. *Herron* did not recognize this possibility, perhaps because the Circuit understood that such an exception could swallow the rule. Every discharge order is, in some way, authorized by or pursuant to state law. If a discharge order that tracks a state statute is a nullity, so is *Herron*—the leading case in this Circuit.

Second, the Nevada Division of Parole and Probation exercised discretion in issuing the Discharge Order. At least one circuit that follows the rule from *Herron* has held that, when a state exercises discretion in issuing a discharge order, the discharge order controls.

MEMORANDUM DECISION AND ORDER - 6

*United States v. Chenowith*, 459 F.3d 635, 638 (5th Cir. 2006). Here, the Nevada Division of Parole and Probation made the discretionary decision to grant Crump an honorable discharge.

Third and finally, even if a discharge order can be mere evidence of the operation of state law, that would not be the case here. Crump's Discharge Order presents itself as a self-contained legal mechanism. It references no law. It purports to restore rights by itself: "The Nevada Board of Parole Commissioners . . . does *hereby* discharge from parole and further liability under his sentence Jason John Crump." Dkt. 21-1 (emphasis added). The word "hereby" especially suggests that this restoration was not the automatic product of state law working in the background. It suggests that the Discharge Order is the vehicle by which the state restored Crump's rights;[1] that before the Order, there was no restoration.[2]

The government also argues that, because the discharge order restored only discrete rights, it should not be read to restore all the rights that Crump lost upon his conviction, as the discharge order in *Herron* did. *Compare* Dkt. 21-1 *with* 45 F.3d at 341, n. 1. This argument fails because Crump got back all the rights he needs for purposes of § 921(a)(20)."[A] defendant who ha[s] been restored the right to vote, hold public office, and serve on a jury ha[s] had his rights substantially restored within the meaning of §

---

[1] When a state institution produces a legally significant document, significance naturally attaches to the document, not the process behind it. Imagine Crump had received, not a discharge letter from a state parole board, but a diploma from a state university. The university's bylaws would require the diploma to be issued on the satisfaction of certain prerequisites, and perhaps even dictate the language of the document itself, but no one would say that Crump's hypothetical degree was the automatic product of university bylaws. People would say he had a degree because he received a diploma. Likewise, Crump's rights were restored because he received a discharge order.

[2] For all three rights listed in the order, the operative date is "the date this order is signed." Dkt. 21-1.

MEMORANDUM DECISION AND ORDER - 7

921(a)(20)." *United States v. Andaverde*, 64 F.3d 1305, 1309 (9th Cir. 1995); *see also Chenowith,* 439 F.3d at 638 ("If, upon release from prison, the suspension of a convicted felon's rights to, inter alia, vote, hold public office, and sit on a jury evaporates . . . such felon's rights have been restored for purposes of § 921(a)(20)"); *Buchmeier v. United States*, 581 F.3d 561, 565 (7th Cir. 2009) (holding that a discharge order which restored a felon's rights to vote and hold office restored his rights under § 921(a)(20)).

Because the Discharge Order governs, and because it did not specifically exclude Crump's right to bear arms, the Court reads it under 18 U.S.C. § 921(a)(20) to include that right. Thus, Crump's prior conviction does not prohibit him from owning guns under 18 U.S.C. § 922(g)(1). Because Crump's rights were restored, the Court will GRANT his first Motion to Dismiss the Indictment. Dkt. 21.

### B. The Right to Bear Arms

Because the Court has already found that the restoration of Crump's civil rights requires the dismissal of the indictment, it need not decide whether the indictment should also be dismissed because § 922(g)(1) is unconstitutional. Crump's second Motion (Dkt. 22) is moot, and as such, is DISMISSED.

### V. CONCLUSION

Crump's Discharge Order restored his civil rights, including his right to bear arms. Thus, his conviction does not prohibit him from owning firearms under 18 U.S.C. § 922(g)(1). The Court will dismiss the indictment.

## VI. ORDER

The Court HEREBY ORDERS:

1. Crump's first Motion to Dismiss the Indictment (Dkt. 21) is GRANTED.

    a. The indictment (Dkt. 1) is DISMISSED.

2. Crump's second Motion to Dismiss the Indictment (Dkt. 22) is DISMISSED as moot.

DATED: January 23, 2023

David C. Nye  
Chief U.S. District Court Judge